## Case No. 13,143.

### Case of SNOW.

[3. Woodb. & M. 430;[1] 10 Law Rep. 344.]

Circuit Court, D. Massachusetts. Oct. Term. 1847.

INSOLVENCY — POOR DEBTOR'S OATH — RELEASE FROM PRISON—FORMER HEARING—SURRENDER OF PROPERTY—HABEAS CORPUS.

1. A debtor in prison and refused to be allowed to take the poor debtor's oath by a commissioner, may afterwards be allowed to take it by another commissioner, if, in the mean time, he has gone into insolvency and surrendered all his property to assignees.

2. It is not the same question in both cases, but his right relates to a different period and to a different condition of his property.

3. A second hearing might also be proper in such case, whenever a mistake or other facts appeared, which would justify a rehearing or new trial in other proceedings.

4. It is probable that in such case the decision of the district judge allowing a second examination, and it being had and the oath allowed, must be regarded as conclusive in favor of them in a petition by the debtor for a habeas corpus to the jailor for refusing to discharge him.

5. Especially may they be, unless so defective as to be void on the face of the record, or unless appearing on facts shown to be entirely erroneous and null.

6. Where the debtor appears to have surrendered all his property fairly and fully, doubtful points should incline in favor of giving him his personal liberty.

[1] [Reported by Charles L. Woodbury, Esq., and George Minot, Esq.]

7. Where no injury or suffering is likely to happen during a hearing first, on a rule to show cause, the writ of habeas corpus will not issue till after such a hearing.

This was a petition by Nathaniel Snow, filed the 18th instant, for a habeas corpus, and setting out in substance the following facts: Two suits had been instituted against him by John B. Myers & Co. in this court, on which property was attached as belonging to Snow. But the title to it was contested, and after judgments only one execution was levied on it, and the question as to the property still remains unsettled. An execution on the other judgment was sued out June 14th, 1847, and the body of Snow arrested the 22d of the same month, and committed to the jail at Cambridge in Middlesex county in this state, where he is still detained by Nathaniel Watson, the keeper of said jail. On the next day after his commitment he procured the liberty of the yard on the prison limits, but was afterwards surrendered and again placed in close confinement. He soon petitioned the district judge to admit him to take the oath of a poor debtor, and be discharged from prison, and the judge appointed Charles Sumner, Esq., as commissioner for that purpose, who, after an examination, under objections by Myers & Co., that Snow still possessed property of considerable value, declined to administer to him the oath and returned the precept with his refusal indorsed thereon. On the 17th of September Snow applied for the appointment of another commissioner to administer the poor debtor's oath to him, having in the meantime gone into insolvency under the statutes of Massachusetts, and all his property passed to a messenger, and afterwards in due time to an assignee selected by his creditors. This last fact, however, was not set out in the petition for a habeas corpus, but was shown at the hearing of the case. The judge of the district court, on being informed of this change in Snow's situation, allowed another commission to issue, empowering Ephraim Buttrick, Esq., to make the examination and administer the oath, and on the 13th of October inst. he administered it, after a hearing of the parties, and certified the fact in writing to the jailer, who still refuses to discharge him. The court on this petition ordered a copy to be served on the jailer, and notice to be given to him and the creditors to appear the next day and show cause why a habeas corpus should not issue with a view to discharge the petitioner. The next day, viz., the 19th inst., the jailer and creditors appeared and the parties were fully heard by:

Mr. Chamberlain, for petitioner.
Mr. Hubbard, for jailer and creditors.

The writ of habeas corpus was allowed to issue, and the next day after the prisoner was brought into court by the jailer with a return that he held him by virtue of the original execution, which has been before described, and that, though the certificate last referred to of the poor debtor's oath having been administered to Snow had been lodged with him, he entertained such doubts of its validity, as not to feel justified in discharging the prisoner, on account of a prior examination and refusal, till some court of competent authority should direct it.

WOODBURY, Circuit Justice. In this case the petition would be in better form, if amended and containing the fact, conceded at the hearing, that between the first and second examination a change had happened in the situation of the petitioner as to the property, all of his having been assigned under the insolvent law, and that fact stated to the district judge as a reason for issuing a second commission. The petitioner is at liberty, therefore, to make that amendment, and having made it, the case will be considered as it now stands. First there had been one commission and an inquiry under it in August, 1847, and a decision made, that Snow then appeared to possess so much property as not to be entitled to have the poor debtor's oath administered to him, under either of the acts of congress on the subject of 1800, or 1824, or 1837. There is no objection to the validity of that proceeding. And whether, in strict law, it is to be considered as rem judicatam between the parties on this point, or not, it would be trifling with the process issued in these cases, and with the decisions of respectable commissioners, to allow another hearing of the same point before another commissioner on the same state of facts. There should, at least, be as much shown to justify it, as is required to have a rehearing in equity, or a new trial at common law.

There should be a new state of facts, or newly discovered evidence, or a clear mistake shown on the old facts. But when either of them is done, if a rehearing or new trial be proper on such grounds, it would be proper a fortiori to allow another examination in a case like this. Here some such grounds did appear on the second application to the judge. The whole property, which prevented a discharge at first, had been surrendered to the creditors, and all the obstacles to the debtor being considered poor were removed. The judge, on being informed of this, properly allowed another commission. And, for anything now shown on the merits, Snow was properly allowed then to take the poor debtor's oath. If, as is urged, proceedings of this kind should be viewed like actions between parties, and conclusive on the merits once settled, it is manifest that by analogy a new hearing was proper on a state of facts occurring which was materially new. So, beyond this, it is manifest that a former judgment between the parties, as for instance, that one was not a poor debtor on a certain day, viz., the 5th of August, should be no bar to showing that he had become a poor debtor on the 14th of October. The point settled is not the same; it relates to a different period, and of course, neither in form or substance, should the first decision in

such a case be conclusive as against the second one. See in Burnham v. Webster [Case No. 2,179], and Greely v. Smith [Id. 5,749], the precedents and reasons collected. It might have been better to have set out the change in his property in writing to the district judge on the second application. But in proceedings like these, not usually very formal, where both parties were present at the subsequent hearing, and the decision appears to have been correct on the facts, I am disposed, in this collateral proceeding, and in favor of personal liberty, not to be over critical and to uphold them. [1 Tidd, Proc. 567.] 2 It is another consideration in favor of such a conclusion, that this course cannot work any essential injury or damage to the creditors. They have a prior claim in the attachment in the other action to all the debtor's property which they choose to seize. They have enjoyed the privilege of waiving their doubtful attachment and resorting to imprisonment of the body in order to compel a surrender of any secreted property, and again, after this discharge, they can probably prove their debt and be allowed a pro rata dividend out of all the property in the hands of the assignees.

As another evidence that the second examination here was proper on a new state of facts, such an one is understood to be given by the Massachusetts statute in express terms. Rev. St. c. 98, § 12. Nor was the length of the notice of fifteen days, as is argued, objectionable, the act of congress requiring only fifteen days, however the local laws provide for more time. Lockhurst v. West, 7 Metc. (Mass.) 230. This objection, too, could not equitably avail after an appearance, and being overruled, as it was before the commissioner, and a full hearing had on the merits.

But beside these answers to most of the exceptions, there exists another entitled to much weight. This is, that the district judge, in whom the power is vested in these cases by the acts of congress, has allowed the second examination. That the commissioner under him, after objections made, has also decided to go into it, and has actually administered the oath to the debtor; and that no request has been made by the creditors to the district judge, on any other proceeding instituted, to annul or set aside the doings of the commissioner, or his certificate to the jailer. There is much, then, in the idea that in this collateral and, in some respects, independent inquiry, we ought to consider those proceedings binding till reversed or quashed. More especially should we do this, unless, on their face, they appear to be so defective as to be utterly void (see Suffolk Bank v. Merrill [Case No. 13, 591], Maine Dist.. Oct.. 1847), or are impeached now by proof of fatal irregularities. But so far from that. they appear well in form, though not so full in some particulars as might be desirable. Nor has any evidence been offered to show them to have been irregular and ille-

gal, or to have been either fraudulent or evasive of the just rights of creditors. On the contrary, there seems presented a proper condition of things for permitting the poor debtor's oath and a discharge. And any suspected concealment of property, or any other attempt by the debtor not to let his creditors enjoy the full benefit of his estate under the insolvent law, is open to exposure, and can effectually be defeated by attending to and enforcing the provisions of that law before the appropriate state tribunals.

On the whole case. then, both on its face on the record, as well as on the facts elicited in this hearing, it seems to me that we should be doing violence to the wishes of congress, as expressed in their several acts, and be accessory to a further infringement of the liberty of a citizen after he has surrendered all his property, and on a hearing been adjudged entitled to a discharge, if we were to allow him to be detained longer in prison under the process of this court.

So far, then. as he is detained by that process in favor of Myers & Co. in the proceedings we have been examining, he must be set at liberty.

NOTE. Though a habeas corpus is often issued on the petition without any hearing first on a rule to show cause. and may be most proper where danger of removal, or much suffering and long delay are probable, yet in other cases as here it is better to issue a rule to show cause first. Ex parte Milburn, 9 Pet. [34 U. S.] 708.